1
2
3
4
5 **UNITED STATES DISTRICT COURT**
6 **DISTRICT OF NEVADA**
7
8  ESPERANZA HOPE PHAM,                          )
                                                 )
9              Plaintiff,                        )          Case No.  2:11-cv-01148-KJD-GWF
                                                 )
10 vs.                                           )          **ORDER**
                                                 )
11 WAL-MART STORES, INC., d/b/a SAM'S CLUB       )
   STORE #6382, *et al.*,                        )
12                                               )
               Defendants.                       )
13 _____)

14          This matter is before the Court on Defendants' Motion to Order Plaintiff to Submit to

15 Physical and Mental Examinations (#75), filed on April 23, 2012; Co-Defendant Bates Metal

16 Products' Joinder in the Motion (#78), filed on May 7, 2012; Plaintiff's Response to Defendants'

17 Motion (#81), filed on May 10, 2012; Defendants' Reply in Support of Motion (#85), filed on May

18 21, 2012; Plaintiff's Supplement to her Response (#86), filed on May 22, 2012[1]; and Defendants'

19 Reply to Plaintiff's Supplement to Her Response (#88), filed May 25, 2012.  The Court conducted

20 a hearing in this matter on May 29, 2012.

21                                      **BACKGROUND**

22          Plaintiff Esperanza Hope Pham was allegedly injured on April 7, 2010 when a mattress

23 display apparatus, that she had laid down on at the invitation of a Sam's Club employee,

24 unexpectedly slid back beneath a metal shelf causing Ms. Pham's "head to crash against the metal

25 shelf, resulting in severe and debilitating mental and physical injuries." *Amended Complaint (#21)*,

26 ¶9.  Plaintiff alleges that as a result of this accident, she "suffered past, present and future mental

27
28          [1]Although Plaintiff's counsel did not obtain leave of court to file this supplement, the Court will
   allow it for the reasons discussed in this order.

and physical pain and suffering, including but not limited to: (1) traumatic diskopathy and/or facet joint arthropathy at C5-6; (2) traumatic lumbar diskopathy and/or facet joint arthropathy; (3) left knee sprain/strain; and (4) closed head injury with post concussion syndrome; emotional distress and medical expenses." *Id.* ¶13.

Pursuant to Rule 35 of the Federal Rules of Civil Procedure, Defendants requested that Ms. Pham submit to medical examinations regarding her alleged mental and physical injuries. In regard to Ms. Pham's claim that she suffered a closed head injury with post concussion syndrome and emotional distress, Defendants seek to have her examined by Dr. Morton Hyson, a licensed medical doctor in the State of Nevada, and a board certified neurologist and psychiatrist. Dr. Hyson's proposed examination will consist of a verbal interview with the Plaintiff, including her neurological history, and a physical neurological examination. The examination is expected to take one hour. *Motion (#75)*, pg. 4.

Plaintiff opposes the mental examination on the grounds that she is simply alleging "garden variety" mental and physical pain and suffering for which a mental or psychiatric examination is not appropriate. *Response (#81)*, pg. 2. Plaintiff also objects because Dr. Hyson has already been provided with discovery responses and deposition transcripts and may be called upon to "give a psychiatric opinion about the potential for secondary gain, malingering and/or any perceived inconsistencies between Ms. Pham's answers to his questions during the psychiatric mental examination and the non-medical deposition or discovery responses . . . ." *Response (#81)*, pgs. 3-4.

Defendants reply they are not requesting a "psychiatric evaluation" of Plaintiff, but rather seek a "mental medical examination." *Reply (#85)*, pg. 3. Defendants also state that Dr. Hyson is not a board certified psychiatrist, although their motion asserts that "Dr. Hyson holds certifications from the American Board of Psychiatry and Neurology." *Motion (#75)*, pg. 4. Plaintiff's Supplement (#86) includes a print out from the Nevada State Board of Medical Examiners which shows that Dr. Hyson is American Board certified in Psychiatry/Neurology.

Defendants also request that Ms. Pham undergo a medical examination by Dr. Andrew Cash of the Desert Institute of Spine Care. Defendants state that Dr. Cash is a licensed medical doctor in

1    the State of Nevada.  The scope of his examination will consist of Plaintiff filling out a

2    questionnaire and undergoing a physical examination.  The examination is expected to take

3    between 15 and 40 minutes.  *Motion (#75)*, pg. 4.  Although Defendants initially requested that Ms.

4    Pham be required to undergo x-rays during the examination, they have since dropped that request.

5         Plaintiff argues that Dr. Cash should not be permitted to conduct a medical examination

6    because he is excessively biased in favor of the defense and Plaintiff fears that Defendants will use

7    Dr. Cash's testimony to attack Ms. Pham's honesty and accuse her of malingering and having a

8    motive for "secondary gain."  In support of this argument, Plaintiff attached an "Independent

9    Medical Evaluation and Medical Records Review" report given by Dr. Cash in an unrelated case in

10   which he discussed the omissions or inconsistencies in the plaintiff's statements regarding her

11   medical history, the inconsistencies between her reported symptoms and limitations compared to

12   what was revealed by surveillance video, and her smoking and gambling habits.  *Response (#81),*

13   *Exhibit 4.*  Plaintiff also objects that Dr. Cash has been provided with non-medical evidence in this

14   case.

15                                        **DISCUSSION**

16        Fed.R.Civ.Pro 35(a)(1) requires the moving party to show that the physical or mental

17   condition of the party to be examined is in controversy and that good cause exists for a mental or

18   physical examination.  In *Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 241-244 (1964), the

19   Supreme Court held that these elements are not met by mere conclusory allegations of the

20   pleading–nor by mere relevance to the case–but require an affirmative showing by the movant that

21   each condition as to which examination is sought is really and genuinely in controversy and that

22   good cause exists for ordering a particular examination. The ability of the movant to obtain the

23   desired information by other means is also relevant.  *Schlagenhauf* states that the Rule requires a

24   discriminating application by the district court as to whether the movant has adequately

25   demonstrated the existence of the Rule's requirements. The Court also noted that there are

26   situations where the pleadings alone are sufficient to meet the controversy requirement of the Rule

27   such as where a plaintiff in a negligence action asserts mental or physical injury.  *Id.* 379 U.S. at

28   119, 85 S.Ct. at 243.

                                             3

1     In arguing that Defendant is not entitled to have Dr. Hyson conduct a mental examination,

2     Plaintiff cites this Court's decision in *U.S.E.E.O.C. v. Consolidated Resorts*, 2008 WL 942289

3     (D.Nev. 2008) which was, in turn, based on *Turner v. Imperial Stores,* 161 F.R.D. 89, 95

4     (S.D.Cal.1995).  *Turner* involved claims for employment discrimination, wrongful termination, and

5     defamation.  The plaintiff alleged that she suffered humiliation, mental anguish and emotional

6     distress as a result of defendants' wrongful acts.  In opposing defendant's motion for a mental

7     examination, plaintiff argued that her damages consisted of the distress and anxiety that arose "in

8     the normal course of human events when a person suffers indignities and deprivation of rights."  *Id.*

9     161 F.R.D. at 92.  The court held that a plaintiff only places her mental condition in controversy for

10    purposes of Rule 35, when, in addition to making a claim of emotional distress, one or more of the

11    following is present: (1) a cause of action for intentional or negligent infliction of emotional

12    distress; (2) an allegation of a specific mental or psychiatric injury or disorder; (3) a claim of

13    unusually severe emotional distress; (4) plaintiff offers expert testimony to support a claim of

14    emotional distress; and/or (5) plaintiff concedes that his or her mental condition is "in controversy"

15    within the meaning of Rule 35(a).

16    *Turner* represents the majority view in regard to emotional distress claims that arise out of

17    alleged wrongful conduct not involving the infliction of physical injury, such as employment

18    discrimination, wrongful termination or defamation.  Courts in such cases have denied motions for

19    mental examinations where the plaintiff alleges only "garden variety" emotional distress, which is

20    defined as "'generalized insult, hurt feelings and lingering resentment.'"  *Ortiz v. Potter*, 2010 WL

21    796960, *2-3 (E.D.Cal. 2010), quoting *Javeed v. Covenant Med. Ctr., Inc.*, 218 F.R.D. 178, 179

22    (N.D. Iowa 2001).

23    The allegations in this case are distinguishable from those in *Turner* and similar cases in

24    which the courts have denied motions for mental examinations.  First, Plaintiff has alleged a

25    specific mental or psychiatric injury or disorder which is one of the *Turner* factors supporting a

26    mental examination.  The amended complaint alleges that Ms. Pham suffered a closed head injury

27    with post concussion syndrome as a result of her head colliding with the metal shelf.  Although not

28    elucidated in either party's brief, *Rugh v. Astrue*, 2008 WL 2156715, *2, n.2 (E.D.Pa. 2008) defines

4

post-concussion syndrome as follows:

> Post-concussive syndrome, or post-concussion syndrome, commonly follows a significant concussion with symptoms including headache, dizziness, fatigue, difficulty concentrating, variable amnesia, depression, apathy and anxiety.  Symptoms usually resolve spontaneously over weeks to months. *The Merk Manual of Diagnosis and Therapy*, 18th ed. (2006), at 2575.[2]

Although Plaintiff states that she does not expect "to call a psychiatric expert to offer expert testimony to support her claim of mental pain and suffering/distress," she does not disavow her claim for closed head injury with post-concussion syndrome, or that she continues to experience symptoms related to this injury.  Plaintiff will have to present expert medical testimony to prove this injury.  Plaintiff has therefore placed her mental condition in controversy as it relates to this alleged injury.  Putting aside Defendants' contradictory assertions regarding Dr. Hyson's board certifications and the somewhat meaningless distinction between a psychiatric examination and a "mental medical" examination, it appears that Dr. Hyson is qualified to perform a neurological and mental examination regarding Plaintiff's alleged closed head injury with post concussion syndrome and emotional distress.  Accordingly, Defendant's motion for a neurological and mental examination of Plaintiff by Dr. Hyson is granted.

Plaintiff does not dispute the appropriateness of a Rule 35 physical examination by an orthopedic physician in regard to Plaintiff's other injuries.  Plaintiff argues, however, that Dr. Cash should not be permitted to conduct the examination.  As a general rule, the moving party is

---

[2]An on-line article in the Mayo Clinic website states that "[p]ost-concussion syndrome is a complex disorder in which a variable combination of post-concussion symptoms–such as headaches and dizziness–last for weeks and sometimes months after the injury that caused the concussion." *See* http://www.mayoclinic.com/post-concussion-syndrome/DS01020.  A copy of the article is attached as an *Addendum* to this order.  The article defines a concussion as a mild traumatic brain injury, usually occurring after a blow to the head.  The article further states:

> Some experts believe post-concussion symptoms are caused by structural damage to the brain or disruption of neurotransmitter systems resulting from the impact that caused the concussion.  Others believe post-concussion symptoms are related to psychological factors, especially since the most common symptoms–headaches, dizziness and sleep problems–are similar to those often experienced by people diagnosed with depression, anxiety or post-traumatic stress disorder. *Id.*

1   permitted to select the physician who will conduct the Rule 35 examination.  The court is not

2   bound by defendant's selection and may reject the chosen physician if he or she is unqualified.

3   "Generally, however, courts have rejected efforts by plaintiffs to disqualify a physician based upon

4   allegations of bias when those allegations are based on the fact that the physician generally is

5   retained by the defense side of a lawsuit." *Lunsford v. Union Pacific R.R. Co.*, 2011 WL 2559839,

6   *2 (E.D.Ark. 2011), citing *McKitis v. Defazio,* 187 F.R.D. 225, 227– 28 (D.Md. 1999; *Duoponce v.*

7   *Drake,* 183 F.R.D. 565, 566 (D.Colo.1998); *Duncan v. Upjohn Co.,* 155 F.R.D. 23, 26

8   (D.Conn.1994); *Great W. Life Assur. Co. v. Levithan,* 153 F.R.D. 74, 77 (E.D.Pa.1994); *Powell v.*

9   *United States,* 149 F.R.D. 122, 124 (E.D.Va.1993); *Looney v. Nat'l R.R. Passenger Corp.,* 142

10  F.R.D. 264, 265 (D.Mass.1992).

11          Plaintiff argues that Dr. Cash's report in an unrelated case was not a professional medical

12  opinion, but was instead a biased attack on the character and credibility of the plaintiff, such as a

13  lawyer might make in a closing argument at trial.  Plaintiff's assertions about that report are not

14  necessarily unfounded.  It is not improper or unusual, however, for an examining physician to

15  evaluate and comment on the credibility of the examinee's subjective complaints or to recognize

16  the possibility of ulterior motives for subjective complaints which, in the opinion of the physician,

17  are not supported by the objective medical findings.  It is also not improper to provide the

18  examining physician with information relevant to the condition that is the subject of the

19  examination, including health care records, or discovery responses and deposition testimony.  The

20  physician's consideration of such information, as well as the reasonableness and fairness of his

21  opinions, are all subject to cross-examination and attack at trial.

22          The court nevertheless has the authority to exclude evidence, including expert opinion

23  testimony, that is irrelevant, or whose probative value is substantially outweighed by the danger of

24  unfair prejudice, confusion of issues or of misleading the jury.  Fed.R.Evid. 402 and 403.  A

25  physician who engages in a pattern or practice of providing improper, inflammatory opinions may

26  justify an order barring him from performing a medical examination pursuant to Rule 35.  The

27  Court, however, will not disqualify Dr. Cash based a single report in an unrelated case.

28  . . .

6

1

**CONCLUSION**

2           The Defendants have demonstrated good cause for an order requiring the Plaintiff to

3    undergo examinations by Dr. Morton Hyson and Dr. Andrew Cash pursuant to Rule 35 of the

4    Federal Rules of Civil Procedure.  Plaintiff's objections to the examinations do not warrant  the

5    denial of either examination by the designated physicians.  Accordingly,

6           **IT IS HEREBY ORDERED** that Defendants' Motion to Order Plaintiff to Submit to

7    Physical and Mental Examinations (#75) is **granted**.  Plaintiff shall submit to a mental medical

8    examination by Dr. Hyson which shall consist of a verbal interview of Plaintiff, including her

9    neurological history and a physical neurological examination.  Plaintiff shall submit to a physical

10   examination by Dr. Cash which shall consist of plaintiff filling out a questionnaire and undergoing

11   a physical examination.  Defendants' counsel shall obtain dates for the examinations and provide

12   those to Plaintiff's counsel.

13          DATED this 29th day of May, 2012.

14

15

16                                                          GEORGE FOLEY, JR.
                                                            United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28

7

# ADDENDUM

Case 2:11-cv-01148-KJD -GWF   Document 90   Filed 05/29/12   Page 9 of 14



MAYO
CLINIC

## MayoClinic.com reprints

This single copy is for your personal, noncommercial use only. For permission to reprint multiple copies or to order presentation-ready copies for distribution, use the reprints link below.

· Order reprints of this article now.

# Post-concussion syndrome

By Mayo Clinic staff

**Original Article:** http://www.mayoclinic.com/health/post-concussion-syndrome/DS01020

## Definition

Post-concussion syndrome is a complex disorder in which a variable combination of post-concussion symptoms — such as headaches and dizziness — last for weeks and sometimes months after the injury that caused the concussion.

Concussion is a mild traumatic brain injury, usually occurring after a blow to the head. Loss of consciousness isn't required for a diagnosis of concussion or post-concussion syndrome. In fact, the risk of post-concussion syndrome doesn't appear to be associated with the severity of the initial injury.

In most people, post-concussion syndrome symptoms occur within the first seven to 10 days and go away within three months, though they can persist for a year or more. Post-concussion syndrome treatments are aimed at easing specific symptoms.

## Symptoms

Post-concussion symptoms include:

- Headaches

Case 2:11-cv-01148-KJD -GWF   Document 90   Filed 05/29/12   Page 10 of 14

- Dizziness

- Fatigue

- Irritability

- Anxiety

- Insomnia

- Loss of concentration and memory

- Noise and light sensitivity

Headaches that occur after a concussion can vary and may feel like tension-type headaches or migraine headaches. Most, however, are tension-type headaches, which may be associated with a neck injury that happened at the same time as the head injury. In some cases, people experience behavior or emotional changes after a mild traumatic brain injury. Family members may notice that the person has become more irritable, suspicious, argumentative or stubborn.

**When to see a doctor**
See a doctor if you experience a head injury severe enough to cause confusion or amnesia — even if you never lost consciousness. If a concussion occurs while you're playing a sport, don't go back in the game. Seek medical attention so that you don't risk worsening your injury.

## Causes

Some experts believe post-concussion symptoms are caused by structural damage to the brain or disruption of neurotransmitter systems, resulting from the impact that caused the concussion. Others believe post-concussion symptoms are related to psychological factors, especially since the most common symptoms — headache, dizziness and sleep problems — are similar to those often experienced by people diagnosed with depression, anxiety or post-traumatic stress disorder. In many cases, both physiological effects of brain trauma and emotional reactions to these effects play a role in the development of symptoms.

Researchers haven't determined why some people who've had concussions develop persistent post-concussion symptoms while others do not. No proven correlation between the severity of the injury and the likelihood of developing persistent post-concussion symptoms exists.

## Risk factors

Risk factors for developing post-concussion syndrome include:

- **Age.** Studies have found increasing age to be a risk factor for post-concussion syndrome.

- **Sex.** Women are more likely to be diagnosed with post-concussion syndrome, but this may be because women are generally more likely to seek medical care.

- **Trauma.** Concussions resulting from car collisions, falls, assaults and sports injuries are commonly associated with post-concussion syndrome.

## Preparing for your appointment

An emergency room doctor often makes the initial diagnosis of a concussion. Once discharged, you may seek care from your family doctor or general practitioner. However, he or she may refer you to a doctor who specializes in brain and nervous system disorders (neurologist) or a brain rehabilitation specialist (physiatrist).

If you are referred to a specialist, it's a good idea to be well prepared for your appointment. Here's some information to help you get ready for your appointment, and know what to expect from your doctor.

### What you can do

- **Write down any symptoms you're experiencing,** including any that may seem unrelated to the reason for which you scheduled the appointment.

- **Write down key personal information,** including any major stresses or recent life changes.

- **Make a list of all medications,** vitamins or supplements that you're taking.

- **Ask a family member or friend to go with you,** if possible. Sometimes it can be difficult to remember all of the information provided to you during an appointment. Someone who accompanies you may remember something that you missed or forgot.

- **Write down questions to ask** your doctor.

Preparing a list of questions can help you make the most of your appointment. List your questions from most important to least important in case time runs out. For post-concussion syndrome, some basic questions to ask your doctor include:

- Why are these symptoms still occurring?

- How long will they continue?

- Do I need any additional tests? Do these tests require any special preparation?

- Are there any treatments available, and which do you recommend?

- Are there any activity restrictions that I need to follow?

- Are there any brochures or other printed material that I can take home with me? What websites do you recommend visiting?

- When can I return to work?

- When can I drive again?

- Is it safe to drink alcohol?

- Is it OK to take my medications that were prescribed before the injury?

In addition to the questions that you've prepared to ask your doctor, don't hesitate to ask questions during your appointment.

### What to expect from your doctor
Your doctor is likely to ask you a number of questions. Being ready to answer them may reserve time to go over any points you want to spend more time on. Your doctor may ask:

- How did the initial injury occur?

- Have your symptoms been constant or do they come and go?

- What symptoms are you currently experiencing?

- How often do your symptoms occur?

- Does anything seem to improve your symptoms?

- What, if anything, makes your symptoms worse?

- Are your symptoms getting worse, staying the same or improving?

## Tests and diagnosis

No single test will prove you have post-concussion syndrome. Your doctor may want to order a scan of your brain to check for other potential problems that could be causing your symptoms. Computed tomography (CT) imaging is generally the preferred test for detecting brain abnormalities.

If you're experiencing a lot of dizziness, you may be referred to a doctor who specializes in ear, nose and throat complaints. A referral to a psychologist or psychiatrist may be in order if your symptoms include anxiety or depression, or if you're having problems with memory or problem solving.

## Treatments and drugs

There is no specific treatment for post-concussion syndrome. Instead, your doctor will treat the individual symptoms you're experiencing. The types of symptoms and their frequency are unique to each person.

### Headaches

Medications commonly used for migraines or tension headaches, including some antidepressants, appear to be effective when these types of headaches are associated with post-concussion syndrome. Examples include:

- **Amitriptyline.** This medication has been widely used for post-traumatic injuries, as well as for symptoms commonly associated with post-concussion syndrome, such as irritability, dizziness and depression.

- **Dihydroergotamine (D.H.E. 45) combined with metoclopramide (Reglan).** These medications may provide relief for chronic headaches, but they must be administered intravenously in the hospital.

Keep in mind that the overuse of over-the-counter and prescription pain relievers may contribute to persistent post-concussion headaches.

### Memory and thinking problems

No medications are currently recommended specifically for the treatment of cognitive problems after mild traumatic brain injury. Time may be the best therapy for post-concussion syndrome if you have cognitive problems, as most of them go away on their own in the weeks to months following the injury.

Certain forms of cognitive therapy may be helpful, including focused rehabilitation that provides training in how to use a pocket calendar, electronic organizer or other techniques to work around memory deficits and attention skills. Relaxation therapy may also help.

### Depression and anxiety

The symptoms of post-concussion syndrome often improve after the affected person learns that there is a cause for his or her symptoms, and that they will likely improve with time. Education about the disorder can ease a person's fears and help provide peace of mind. If you're experiencing new or increasing depression or anxiety after a concussion, some treatment options include:

- **Psychotherapy.** It may be helpful to discuss your concerns with a psychologist or psychiatrist who has experience in working with people with brain injury.

- **Medication.** To combat anxiety or depression, antidepressants or anti-anxiety medications may be prescribed.

## Pre ention

The only known way to prevent post-concussion syndrome is to avoid the head injury in the first place.

### A oiding head in uries

Although you can't prepare for every potential situation, here are some tips for avoiding common causes of head injuries:

- **asten your seat belt** whenever you're traveling in a car, and be sure children are in age-appropriate safety seats. Children under 13 are safest riding in the back seat, especially if your car has air bags.

- **se helmets** whenever you or your children are bicycling, roller-skating, in-line skating, ice-skating, skiing, snowboarding, playing football, batting or running the bases in softball or baseball, skateboarding, or horseback riding. Wear a helmet when riding a motorcycle.

- **Take steps around the house to pre ent falls,** such as removing small area rugs, improving lighting and installing handrails.

References

Sept. 29, 2011                                   DS01020

© 1998-2012 Mayo Foundation for Medical Education and Research (MFMER). All rights reserved. A single copy of these materials may be reprinted for noncommercial personal use only. "Mayo," "Mayo Clinic," "MayoClinic.com," "EmbodyHealth," "Enhance your life," and the triple-shield Mayo Clinic logo are trademarks of Mayo Foundation for Medical Education and Research.